SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
MATTHEW M. SONNE, Cal. Bar No. 239110
650 Town Center Drive, 10th Floor
Costa Mesa, California 92626-1993
Telephone: 714.513.5100
Facsimile: 714.513.5130
E mail      msonne@sheppardmullin.com

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
BRYANNE J. LEWIS, Cal. Bar No. 311763
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone: 213.620.1780
Facsimile: 213.620.1398
E mail      blewis@sheppardmullin.com

Attorneys for Defendant
HSS CALIFORNIA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEJANDRO VELASCO, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> HSS CALIFORNIA, INC., a Delaware corporation; and DOES 1 through 50, inclusive, <br><br> Defendants. | Case No. <br><br> **DEFENDANT HSS CALIFORNIA, INC.'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S. §§ 1332, 1441, AND 1446** <br><br> **(CLASS ACTION FAIRNESS ACT)** <br><br> (Contra Costa County Superior Court Case No. C24-01332) <br><br> Filed concurrently with Certification of Conflicts and Interested Parties; Declaration of Bryan Jones; and Civil Cover Sheet] <br><br> Complaint Filed: May 17, 2024 |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**:

**PLEASE TAKE NOTICE** THAT Defendant HSS CALIFORNIA, INC. ("Defendant") hereby removes the state court action *Alejandro Velasco, et al. v. HSS California, Inc. and DOES 1-50*, pending in the Superior Court of the State of California in and for the County of Contra Costa, Case No. C24-01332, to the United States District Court for the Central District of California. Removal is based on the Class Action Fairness Act ("CAFA"). This Court has original subject matter jurisdiction over Plaintiff Alejandro Velasco's ("Plaintiff") lawsuit under 28 U.S.C. §§ 1332(d), 1441 and 1446, because it is a proposed class action, minimal diversity exists, and the amount in controversy exceeds $5,000,000. Accordingly, removal is proper based on the following grounds:

## I.  STATEMENT OF JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

1. CAFA was enacted on February 18, 2005. In relevant part, CAFA grants federal district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant, and where the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

2. This Court has jurisdiction over this case under the Class Action Fairness Act, 28 U.S.C. section 1332(d), and this case may be removed pursuant to the provisions of 28 U.S.C. section 1441(a), in that it is a civil class action wherein: 1) the proposed class contains at least 100 members; 2) the defendant is not a state, state official or other governmental entity; 3) the total amount in controversy for all class members exceeds $5,000,000; and 4) there is diversity of citizenship between at least one class member and one defendant. Each of these conditions were satisfied at the time this action was initiated and now at the time of removal.

3. As set forth below, this case meets all of CAFA's requirements for

removal and is timely and properly removed by the filing of this Notice.

## II. STATUS OF PLEADINGS

4. On May 17, 2024, Plaintiff Alejandro Velasco ("Plaintiff") filed an action in the Superior Court of the State of California in and for the County of Contra Costa, entitled *Alejandro Velasco, et al. v. HSS California, Inc. and DOES 1-50*, Contra Costa County Superior Court Case No. C23-01332 ("Complaint").

5. Plaintiff served HSS California, Inc. with a copy of the Complaint and related documents on May 23, 2024. Thus, this Notice of Removal is timely filed in accordance with 28 U.S.C. section 1446(b).

6. A true and correct copy of the Complaint, Civil Case Cover Sheet, Summons, Notice of Department Assignment, Proof of Service Summons, and all other "process, pleadings, and orders" from the state court action are attached hereto as **Exhibits A through E.** *See* 28 U.S.C. § 1446(a).

7. Plaintiff's Complaint asserts putative class claims for: (1) failure to pay overtime wages; (2) failure to pay minimum wage; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) waiting time penalties; (6) wage statement violations; (7) failure to reimburse necessary business expenses; and (8) violation of the Unfair Competition Law under Business & Professions Code § 17200, *et seq*.

8. Prior to filing this Notice of Removal, Defendant filed its Answer to the Complaint in Contra Costa County Superior Court and served its Answer on Plaintiff. Attached hereto as **Exhibit F** is a true and correct copy of Defendant's Answer to the Complaint.

9. A true and correct copy of this Notice of Removal will be filed with the Clerk of the Contra Costa County, California Superior Court in accordance with 28 U.S.C. § 1446(d), along with a notice of that filing, a copy of which will be served on all parties.

10. Venue is proper in this Court pursuant to 28 U.S.C. sections 84(c), and

1391.

## III. JURISDICTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT IS SATISFIED

1. Under CAFA, a removing defendant need not submit any evidence of the facts establishing jurisdiction in its notice of removal. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 551 (2014) (A notice of removal "need not contain evidentiary submissions."). Rather, "[a] defendant's notice of removal need include only a plausible allegation that the jurisdictional facts exists." *Id*. at 554. Evidence is required "***only*** when the plaintiff contests, or the court questions, the defendant's allegation." *Id*. (emphasis added); *Arias v. Residence Inn by Marriott*, 936 F.3d 920 (9th Cir. 2019) (court may not remand where notice of removal plausibly alleges the basis for removal, without giving the defendant an opportunity to prove the jurisdictional requirements are satisfied). As the Ninth Circuit astutely stated on August 8, 2019: "When a defendant removes a case to federal court pursuant to the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1332(d), how much evidence of the parties' citizenships must it provide? If the defendant's citizenship allegations are unchallenged factually, the answer is none." *Ehrman v. Cox Commc'ns, Inc.*, No. 19-55658, 2019 WL 3720013 (9th Cir. Aug. 8, 2019).

2. The United States Supreme Court in *Dart Cherokee* held that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court," adding that "CAFA should be read 'with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'" *Id*. Following *Dart Cherokee*, the Ninth Circuit has directed the district courts to "interpret CAFA's provisions under section 1332 **broadly in favor of removal**…" *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1184 (9th Cir. 2015) (emphasis added); *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) ("Congress intended CAFA to be interpreted expansively"). In *Bridewell-Sledge v. Blue Cross*, 798 F.3d

-4-

923 (9th Cir. 2015), the Ninth Circuit held that under *Dart Cherokee*, the district court erred "in its remand orders by applying a 'strong presumption against removal jurisdiction.'" *See also Moppin v. Los Robles Reg'l Med. Ctr.*, 2015 U.S. Dist. LEXIS 129574, at *4 (C.D. Cal. 2015) ("[N]o presumption against removal exists in cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court").

### A. The Case Is a Proposed Class Action with a Putative Class of At Least 100 Members, and Defendant Is Not a State, State Official, or Government Entity

3. This action has been styled as a California class action under California Code of Civil Procedure § 382. (Compl. ¶ 1 ("This is a Class Action, pursuant to California Code of Civil Procedure § 382.").) Code of Civil Procedure § 382 is a state statute authorizing an action to be brought by one or more representative persons as a class action.

4. 28 U.S.C. § 1332(d)(5) excludes from CAFA jurisdiction cases in which "the primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief; or…the number of members of all proposed plaintiff classes in the aggregate is less than 100."

5. Defendant is not a state, a state official, nor a government entity.

6. Plaintiff seeks to certify a class of "all current or former non-exempt hourly employees who work or worked for Defendant in California during the four years immediately preceding the filing of the Complaint through the date of trial." (Compl. ¶ 36.) On the basis of its own investigation, Defendant determined there are more than 100 current and former non-exempt employees of Defendant in California during the proposed class period of May 17, 2020 through the present ("Class Period"). Therefore, the Class Period consists of at least 100 members now at the time of removal and at the institution of this civil action. Accordingly, because there

are at least 100 persons, this CAFA requirement is satisfied. 28 U.S.C. § 1332(d)(5)(B).

### B. Minimum Diversity of Citizenship Exists Here

7. CAFA requires minimum diversity of citizenship, pursuant to 28 U.S.C. section 1332(d)(2):

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which –
> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

11. CAFA's minimal diversity requirement is satisfied when: (1) at least one plaintiff is a citizen of a state in which none of the defendants are citizens; (2) at least one plaintiff is a citizen of a foreign state and one defendant is a U.S. citizen; or (3) at least one plaintiff is a U.S. citizen and one defendant is a citizen of a foreign state. See 28 U.S.C. § 1332(d).

12. Defendant is informed and believes, and on that basis alleges, that Plaintiff Justin Corralejo is a citizen of California. Plaintiff alleges "at all relevant times herein, Plaintiff…was and currently is a California resident residing in the State of California. (Compl. ¶ 9.)

13. Plaintiff's Complacomplaint further alleges that the putative class consists of "all current or former non-exempt hourly employees who work or worked for Defendant in California during the four years immediately preceding the filing of the Complaint through the date of trial." (Compl. ¶ 36.) (emphasis added).

14. For diversity purposes, a corporation is deemed to be a citizen of the state in which it has been incorporated and the state where it has its principal place of business. See 28 U.S.C. § 1332(c)(1). A corporation's principal place of business is the state containing "'a substantial predominance of corporate operations.'" *Tosco Corp. v. Communities for a Better Environment*, 236 F.3d 495,

500 (9th Cir. 2001) (quoting *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990)).

15. The U.S. Supreme Court has issued clarification on the definition of a corporation's "principal place of business." In *Hertz Corp. v. Friend*, 130 S.Ct. 1181, 1192 (2010), the Supreme Court concluded that that "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." The Supreme Court further clarified that, "in practice" the principal place of business "should normally be the place where the corporation maintains its headquarters - provided that the headquarters is the actual center of direction, control, and coordination." *Hertz Corp.,* 130 S.Ct. at 1192.

16. Under the foregoing standard, the facts here clearly establish that Defendant is now at the time of this removal, and were at the institution of this civil action, citizens of Delaware and Colorado for purposes of removal. Defendant HSS California, Inc. is now at the time of this removal, and was at the institution of this civil action, a Delaware corporation with its headquarters and principal place of business in Denver, Colorado. *Id.* at ¶ 5. Most of Defendant HSS California, Inc.'s executive and administrative functions occur in the corporate headquarters, which are located in Denver, Colorado. *Id*. Thus, HSS California, Inc. is a foreign corporation and was so at the time this suit was filed. *See* 28 U.S.C. § 1332(c)(1).

17. The citizenship of Defendant's Does 1-50, which is not alleged in the Complaint, must be disregarded. *See* 28 U.S.C. § 1441(b)(1); *California ex rel. Bates v. Mortgage Elec. Registration Sys., Inc.*, No. 2:10-CV-01429-GEB-CMK, 2010 WL 2889061, at *2 (E.D. Cal. July 21, 2010) ("Congress obviously reached the conclusion that doe defendants should not defeat diversity jurisdiction" by amending the removal statutes to state that "[f]or purposes of removal . . . , the citizenship of defendants sued under fictitious names shall be disregarded" (quoting *Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1528 (9th Cir. 1987) and 28 US.C. §

1441(b)). Accordingly, because there is at least minimal diversity between the parties, the second CAFA requirement is satisfied. *See id*. § 1332(d)(2).

### C. The Amount In Controversy Exceeds The $5,000,000 Requirement Under CAFA

18.  To confer subject matter jurisdiction on this Court based on diversity of citizenship, the amount in controversy must exceed the sum or value of $5,000,000, exclusive of interest and costs. *Id*. Under CAFA, the claims of the individuals comprising a putative class are aggregated to determine if the amount in controversy exceeds the $5,000,000 jurisdictional threshold. *Id*. § 1332(d)(6).

19.  "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdiction threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 554 (2014). Moreover, a defendant need not set forth evidence establishing the amount in its notice of removal. *Id*. A defendant is not obliged to "research, state, and prove the plaintiff's claims for damages." *McCraw v. Lyons*, 863 F. Supp. 430, 434 (W.D. Ky. 1994). A defendant can establish the amount in controversy by "providing only a short and plain statement of the grounds for removal." *Ehrman v. Cox Commc'ns, Inc*., 2019 WL 3720013 (9th Cir. Aug. 8, 2019); *see also Dart Cherokee*, 135 S. Ct. at 547 (holding that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" and evidentiary submissions are required only if "the plaintiff contests, or the court questions, the defendant's allegations"). Here, Defendant alleges there is more than $5,000,000 in controversy.

20.  CAFA authorizes the removal of class actions in which, among the other factors mentioned above, the *aggregate* amount in controversy for all class members exceeds five million dollars ($5,000,000.00). *See* 28 U.S.C. § 1332(d). By demonstrating that the actual amount in controversy exceeds the threshold, Defendant does not concede the validity of Plaintiff's claims or the likelihood that

1 Plaintiff will recover anything.

2     21.   "In determining the amount in controversy, the Court accepts the
3 allegations contained in the complaint as true and assumes the jury will return a
4 verdict in the plaintiff's favor on every claim." *Henry v. Cent. Freight Lines, Inc.*,
5 692 F. App'x 80s6, 807 (9th Cir. 2017). "The amount in controversy is simply an
6 estimate of the total amount in dispute, not a prospective assessment of defendant's
7 liability." *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010); *see
8 also Muniz v. Pilot Travel Centers LLC*, 2007 WL 1302504, at *3 (E.D. Cal. 2007)
9 ("The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's
10 complaint, not what a defendant will *actually* owe") (original emphasis); *see also
11 Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010)
12 ("In deciding the amount in controversy, the Court looks to what the plaintiff has
13 alleged, not what the defendants will owe") (aff'd by 631 F.3d 1010 (9th Cir. 2011)).

14     22.   In the Ninth Circuit, the amount in controversy is determined "at the
15 time of removal." *Kroske v. US Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005)
16 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir.
17 1997). In *Chavez v. JPMorgan Chase*, 888 F.3d 413, 417 (9th Cir. 2018), the Ninth
18 Circuit held "[t]hat the amount in controversy is assessed at the time of removal
19 does not mean that the mere futurity of certain classes of damages precludes them
20 from being part of the amount in controversy." *Chavez*, 888 F.3d at 417 (original
21 emphasis). *Chavez* held that "the amount in controversy is not limited to damages
22 incurred prior to removal—for example, it is not limited to wages plaintiff-employee
23 would have earned before removal (as opposed to after removal). Rather, the
24 amount in controversy is determined by the complaint operative at the time of
25 removal and encompasses all relief a court may grant on that complaint if the
26 plaintiff is victorious." *Id.* at 414-15. These principles were affirmed again by the
27 Ninth Circuit in *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785 (9th Cir.
28 2018).

23. Plaintiff's pleadings in this action fail to affirmatively disclose the amount in controversy or information from which Defendant could readily ascertain the amount in controversy without independent investigation and analysis. Plaintiff's pleadings were each "indeterminate" as to whether federal jurisdiction under 28 U.S.C. § 1332(d) existed within the meaning of *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689 (9th Cir. 2005) and *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121 (9th Cir. 2013).

24. Defendant provides the following calculations only to demonstrate that the amount in controversy in this case easily exceeds the jurisdictional amount in controversy under CAFA jurisdiction. Defendant makes no admission of any liability or damages with respect to any aspect of this case, or to the proper legal test to be applied to Plaintiff's claims. Nor does Defendant waive its right to ultimately contest the proper amount of damages due, if any, should Plaintiff prevail with respect to any of his claims.

25. In the Complaint, Plaintiff asserts claims for damages and restitution on behalf of a proposed class of all current and former non-exempt employees employed by Defendant in California at any time during the Class Period. (Compl. ¶¶ 4-5, Prayer for Relief.)

26. Defendant HSS California, Inc. independently determined based on its own business records that Plaintiff's proposed putative class is comprised of at least 1,353 non-exempt employees during the Class Period. *See* Jones Decl., ¶ 6. These employees worked approximately 45,080 pay periods during the Class Period. *Id.* Additionally, Defendant paid proposed putative class members at least the hourly minimum wage required by the law in California during the relevant time period. Accordingly, during the Class Period non-exempt employees were paid an average hourly base wage of at least $14.70 per hour. *Id.*, ¶ 7.

<u>Overtime and Minimum Wage Claims</u>

27. Plaintiff's first cause of action is for an alleged failure to pay minimum

wages. (Compl. Pg. 12.) Plaintiff alleges that "[a]t all relevant times herein, Defendant failed to record all time accurately worked. This includes, but is not limited to, the Defendant's uniform and unlawful rounding and/or time editing policy/practice and a policy and practice of automatically deducting 30 minutes for meal periods from non-except employees' time entries, which resulted in these individuals not being paid for all hours they actually suffered or permitted to work. Accordingly, Plaintiff and members of the Classes were not compensated for all hours worked." (Compl. ¶46.) Assuming, based on Plaintiff's allegations, that employees worked 15 minutes of unpaid non-overtime work per pay period, a reasonable estimate of the amount in controversy for Plaintiff's minimum wage claim is at least approximately **$165,669** ($14.70 hourly rate x .25 hours per pay period x 45,080 pay periods). Plaintiff also seeks to recover liquidated damages for the alleged failure to pay minimum wages, which would equal to the amount recovered for unpaid minimum wages. (Compl. ¶ 41.) Thus, Plaintiff would presumably seek to recover an additional **$165,669**.

28.    Plaintiff's second cause of action is for an alleged failure to pay overtime wages in alleged violation of California Labor Code § 510. (Compl. ¶ 31.) Plaintiff alleges "Defendant caused Plaintiff to work overtime and hours but did not compensate Plaintiff or members of the Overtime Subclass[1] at one and one-half times their "regular rate of pay" for such hours." (Compl. ¶53.) Moreover, Plaintiff alleges "At all relevant times herein, Defendant failed to conform its pay practices to the requirements of the law. This unlawful conduct includes but is not limited to time rounding and/or time editing policy/practice and automatically deducting 30-minutes for meal periods from non-except employees' time entries, which resulted

---

[1] Plaintiff defines the Overtime Subclass as "All current or former non-exempt employees who worked for Defendant in California and worked overtime hours during at least one shift during the four years immediately preceding the filing of the Complaint through the date of trial." (Compl. ¶ 36.)

in these individuals not being paid for all overtime hours worked." (Compl. ¶54.) Assuming, based on Plaintiff's allegations, that employees worked 15 minutes of unpaid overtime per pay period, a reasonable estimate of the amount in controversy for Plaintiff's overtime claim is at least approximately **$248,503** ($14.70 hourly rate x .25 hours per pay period x 45,080 pay periods x 1.5 OT premium).

<u>Meal Periods</u>

29. Plaintiff's third cause of action is for an alleged failure to provide meal periods in alleged violation of "California Labor Code §§ 226.7 and 512, as well as the applicable Wage Orders of the Industrial Welfare Commission." (Compl. ¶¶ 57-59.) Plaintiff alleges that during the Class Period, "non-exempt employees were denied compliant and timely 30-minute off-duty meal periods as mandated by California law. <u>Due to Defendant's uniform meal period policies/practices</u>, operational requirements, and work demands, Plaintiff and other non-exempt employees often could not take timely and uninterrupted net 30-minute first meal periods before the end of the fifth hour of work. Further, when Plaintiff and other non-exempt employees worked more than 10.0 hours in a shift, they were not allowed and permitted to take a mandated second meal period before the end of the tenth hour of work in violation of the Labor Code and applicable Wage Orders." (*Id.* ¶ 23) (emphasis added.) Plaintiff alleges "Defendant had a <u>practice</u> of auto deducting 30 minutes for meal periods from non-exempt employees' time entries regardless of whether a full 30-minute uninterrupted meal was provided or taken. As a result of these company-wide policies/practices, Plaintiff and other non-exempt employees are not compensated for all the hours that they actually work and all of the overtime hours they actually work, in violation of Labor Code §§ 204, 210, 510, 1194, 1197.1, 1199, and applicable Wage Orders." (*Id.* ¶ 18) (emphasis added.) Moreover, Plaintiff alleges "Defendant has not paid an additional hour of pay at the "regular rate of pay" to Plaintiff and Class members at their respective regular rates of pay for each violation, per California Labor Code § 226.7." (*Id.* ¶ 58). Based on

Plaintiff's allegations, it is reasonable to infer that Plaintiff is alleging class members were unlawfully deprived of at least one meal break per workday, entitling each to one hour of pay per workday. *See* Cal. Lab. Code § 226.7(c).

30. Defendant independently determined based on its own business records and on the allegations within Plaintiff's Complaint that the amount in controversy for meal period premium damages is at least approximately **$1,998,028** which assumes arguendo that there were three missed meal periods per pay period per employee, which is exceedingly conservative based on Plaintiff's allegations (45,080 pay periods x 3 missed meal period per pay period x $14.70 hourly rate).

<u>Waiting Time Penalties</u>

31. Plaintiff alleges that "Defendant willfully failed to pay the Waiting Time Subclass[2] for all hours worked, including all minimum and overtime wages, and their meal and rest period premiums at the "regular rate of pay" before or upon termination or separation from employment with Defendant as required by Labor Code §§ 201 and 202." (Compl. ¶ 75.) The penalty for failure to pay earned wages under section 203 is up to thirty days of continuing wages. Cal. Lab. Code § 203(a). Based on Plaintiff's allegations, it is reasonable to infer that Plaintiff is alleging that all class members who were terminated or discharged at any time from May 17, 2020 to present are entitled to thirty-days of continuing wages.

32. The statute of limitations for Plaintiff's waiting time penalties claim is three years. Labor Code § 203(b); *Pineda v. Bank of Am., N.A.*, 50 Cal.4th 1389, 1390 (2010). Based on the three year statute of limitations, there are at least 726 non-exempt employees in California whose employment terminated between May 17, 2020 and the present. (Jones Decl. ¶ 8.) Assuming each putative class member

---

[2] Plaintiff defines the Waiting Time Subclass as "All employees who work or worked for Defendant in California and who left their employment during the three years immediately preceding the filing of the Complaint through the date of trial." (Compl. ¶ 36.)

whose employment terminated at any time between May 17, 2020 and the present averaged a work schedule of eight hours per day, a reasonable estimate of the amount in controversy for waiting time penalties as to the putative class is approximately **$2,561,328** [$14.70 per hour * 8 hours/day *30 days * 726 former employees].

Itemized Wage Statements

33. Plaintiff's fifth cause of action, failure to provide accurate itemized wage statements, alleges "[a]s a result of Defendant's failure to pay Plaintiff and the Wage Statement Subclass[3] for all minimum and overtime wages, and missed meal and rest period premiums at the appropriate legal rate, Defendant failed to include required information on Plaintiff and the Wage Statement Subclass' wage statements, including, but not limited to, the gross wages earned, the net wages earned in violation of Labor Code section 226(a)." (Compl. ¶ 68.) Because of this alleged violation, Plaintiff alleges that he and the Wage Statement Class are entitled to recover $50 for the initial pay period during the period in which violation of Labor Code § 226 occurred and $100 for each violation of Labor Code § 226 in a subsequent pay period, not to exceed an aggregate penalty of $4,000 per employee." (*Id.* ¶ 70.)

34. Under Cal. Labor Code § 226(e), an employee who suffers injury as a result of an intentional and knowing failure by his or her employer to provide complete and correct wage statements may recover $50 for the initial pay period in which a violation occurs and $100 for each violation in a subsequent pay period, up to a maximum of $4,000.

35. The statute of limitations for California wage statement penalties is one

---

[3] Plaintiff defines the Wage Statement Subclass as "All employees who work or worked for Defendant in California and who left their employment during the three years immediately preceding the filing of the Complaint through the date of trial." (Compl. ¶ 36.)

year. Cal. Code Civ. Proc. § 340(a). Thus, the relevant time period alleged by Plaintiff for his wage statement penalties claim is May 17, 2023 through the present. During this period, Defendant's employed at least 584 putative class members in California. (Jones Decl. ¶ 9.) During the relevant time period of May 17, 2023 to present, there were approximately 11,040 pay periods. (Jones Decl. ¶ 10.) Defendant independently determined based on its business records and on the allegations contained within Plaintiff's Complaint that Plaintiff alleged an amount in controversy for wage statement penalties damages in the amount of at least approximately **$1,074,800** [(584 putative class members *$50 (Initial Penalty)] + [11,040 total pay periods - 584 initial pay periods] *$100 (Continuing Penalty)).

Business Expenses

36. Plaintiff alleges proposed class members were not reimbursed for business expenses by Defendant. (Compl. ¶ 78.) Plaintiff alleges that "Defendant has failed to comply with Labor Code Section 2802 and the applicable Wage Orders by failing to reimburse Plaintiff and the Class for all necessary business expenditures." (*Id.* ¶ 79.) Plaintiff claims these business expenses include monthly personal cell phone expenses. (*Id.*)

37. Under Labor Code § 2802 an employer shall indemnify his or her employees for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer.

38. Thus, Plaintiff's claim for failure to reimburse business expenses further increases the amount in controversy beyond the jurisdictional minimum of $5,000,000.

Amount in Controversy for Attorneys' Fees

39. In addition to damages, Plaintiff and the putative class seek attorneys' fees. (Compl. Prayer for Relief (pg. 19).) Under Ninth Circuit precedent, a plaintiff's claim for attorneys' fees must be included in the amount in controversy.

*Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."). In *Fritsch v. Swift Transp. Co. of Ariz., LLC,* 899 F.3d 785 (9th Cir. 2018), the Ninth Circuit held that future attorneys' fees that are claimed, but not accrued at the time of removal, must be considered in the amount in controversy.  In California, where wage and hour class actions have settled prior to trial for millions of dollars, it is not uncommon for an attorneys' fee award to be twenty-five to forty percent of the settlement. Moreover, the Ninth Circuit has previously used a benchmark rate of 25% of the potential damages to approximate potential attorneys' fees. *See, e.g.*, *Molnar v. 1-800-Flowers.com, Inc.*, No. CV08-0542CAS (JCX), 2009 WL 481618, at *5 (C.D. Cal. Feb. 23, 2009) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 20003).   In the class action context, courts have held that parties may use a 25% benchmark of total recovery when estimating the attorneys' fees in controversy.  *Greene v. Harley Davidson*, 2020 WL 3969285, n.4 (9th Cir. 2020); *Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013); *Rodriguez v. Cleansource, Inc.*, 2014 WL 3818304, at *4 (S.D. Cal. 2014); *Marshall v. G2 Secure Staff, LLC*, 2014 WL 3506608 (C.D. Cal. 2014); *Jasso v. Money Mart Exp., Inc.*, 2012 WL 699465 (N.D. Cal. 2012); *Ramos v. Schenker, Inc.*, 2018 WL 5779978, at *3 (C.D. Cal. 2018); *Ramirez v. Benihana Nat'l Corp.*, 2019 WL 131843, at *2 (N.D. Cal. 2019); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees").  Thus, an additional minimum amount of at least **$1,553,499** must be included in the amount in controversy ([at least $248,503 in alleged overtime wages + at least $331,338  in alleged minimum wages and liquidated damages + at least $1,998,028 in alleged meal period premiums + at least $2,561,328 in alleged waiting time penalties + at least $1,074,800 in alleged wage statement penalties] x 25% = $1,553,499).

-16-

40. And the same amount for alleged attorneys' fees is in controversy using the "lodestar" method of fee computation. *See Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery"); *see also Smith v. CRST Van Expedited, Inc.*, 2013 WL 163293, at *5 (S.D. Cal. 2013) ("California has recognized that most fee awards based on either a lodestar or percentage calculation are 33 percent and has endorsed the federal benchmark of 25 percent").

41. If Plaintiff were to prevail on his request for class certification and recover a class-wide judgment on behalf of all California residents employed as non-employees by Defendant from May 17, 2020 through the present, then an award of money damages and attorneys' fees could easily exceed the sum of $5,000,000. Thus, CAFA's $5,000,000 amount-in-controversy requirement is satisfied.

### D. The Exceptions to CAFA Do Not Apply

42. Plaintiff bears the burden of establishing any applicable exceptions to CAFA jurisdiction. *See, e.g., Serrano*, 478 F.3d at 1019, 1021 (holding that the party seeking to remand the case to state court bears the burden of establishing the exceptions to CAFA); *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 618-19 (7th Cir. 2012); *Greenwich Fin. Serv. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp.*, 603 F.3d 23, 26 (2d Cir. 2010); *Preston v. Tenet Healthsys. Mem. Med. Ctr., Inc.*, 485 F.3d 804, 812-13 (5th Cir. 2007); *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164 (11th Cir. 2006).

43. CAFA provides mandatory exceptions to the application of federal jurisdiction under section 1332(d)(4)-(5) and one discretionary exception to federal jurisdiction under section 1332(d)(5). *See Serrano*, 478 F.3d at 1019 (discussing CAFA exceptions).

44. Plaintiff's Complaint makes clear that none of these exceptions applies. Each of the CAFA exceptions requires, as a starting point, either an in-state

defendant, 28 U.S.C. § 1332(d)(3)-(4) (requiring either "significant relief" to be sought from an in-state defendant (local controversy exception) or requiring the "primary defendant" to be an in-state defendant ("home state" and discretionary exceptions to CAFA)), or that all claims in the class action relate solely to securities or the internal governance of a business entity, *id*. § 1332(d)(5). Here, Defendant is a foreign corporation, and none of the claims relate to securities or internal governance. (Jones Decl. ¶ 5.) Therefore, none of the CAFA exceptions apply.[4]

## IV.   CONCLUSION

Because the CAFA jurisdiction requirements are met, and because the exceptions to the Court's exercise of jurisdiction do not apply, this case is properly removed.

For these reasons, Defendant respectfully requests that the Court assume jurisdiction over this action.

Respectfully submitted,

Dated: June 24, 2024         SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: *[signature: Bryanne Lewis]*

MATTHEW M. SONNE
BRYANNE J. LEWIS

Attorneys for Defendant
HSS CALIFORNIA, INC.

---

[4] The CAFA exceptions do not apply for other reasons as well. Defendant reserves its right to address these issues in detail if Plaintiff files a motion to remand to state court.

SMRH:4863-5881-0826.1