UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| ALEJANDRO VELASCO, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HSS CALIFORNIA, INC.,<br><br>Defendant. | Case No. 24-cv-03769-LB<br><br>**ORDER DENYING MOTION TO REMAND**<br><br>Re: ECF No. 8 |

## INTRODUCTION

In this putative wage-and-hours class action filed in state court and removed to federal court, the plaintiff sued his former employer, HSS California, Inc., asserting state-law wage-and-hours claims, including a failure to pay minimum and overtime wages and provide meal and rest breaks. The defendants asserted diversity jurisdiction under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d). The plaintiff moved to remand on the ground that HSS California did not establish that the amount in controversy exceeds $5 million, as required by CAFA. The court denies the motion.

**STATEMENT**

The plaintiff resides in California and worked as a non-exempt employee for HSS California, Inc., from April 23, 2023, to May 1, 2024.[1] Defendant HHS California is a Delaware corporation with its headquarters and principal place of business in Colorado.[2]

The plaintiff alleges that he and other non-exempt employees regularly worked shifts that were more than eight hours a day and forty hours a workweek. The defendant failed to record time accurately, including by unevenly rounding or editing non-exempt employees' time entries, which meant that employees were not compensated for the time they actually worked, resulting in an incorrect overtime rate. The defendant automatically deducted thirty minutes for meal breaks regardless of whether a full break was taken or given.[3] Employees often could not take meal breaks and were not permitted to take a second meal break when they worked more than ten hours. They were not given provided rest periods, including a second rest period for shifts over six hours and a third break for shifts over ten hours.[4] Based on the defendant's failure to pay non-exempt employees for all hours they worked, including overtime and minimum wages, the wage statements were incorrect, and the defendant did not pay employees all wages due at their separation from employment.[5] The defendant did not reimburse non-exempt employees for necessary work-related expenses because the employees had to use personal cell phones for work.[6]

The complaint has eight claims: (1) failure to pay minimum wages; (2) failure to pay overtime wages; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) wage-statement violations; (6) waiting-time penalties; (7) failure to reimburse necessary business expenses; and (8) a violation of California's Unfair Competition Law (UCL).[7] The defendant removed the case,

---

[1] Compl. – ECF No. 1-1 at 4 (¶ 9), 5 (¶ 16). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Notice of Removal – ECF No. 1 at 7 (¶ 16); Jones Decl. – ECF No. 3 at 2 (¶ 5).

[3] Compl. – ECF No. 1-1 at 5–6 (¶¶ 17–21).

[4] *Id.* at 7–8 (¶¶ 24–30).

[5] *Id.* at 9 (¶¶ 31–34).

[6] *Id.* at 9–10 (¶ 35).

[7] *Id.* at 13–19 (¶¶ 44–86).

asserting diversity jurisdiction under CAFA and calculating potential damages exceeding $5 million.[8] The plaintiff moved to remand on the ground that the defendants did not submit credible evidence to support their calculations.[9]

In support of its Notice of Removal, the defendant submitted a declaration from Bryan Jones, President for HSS Security, LLC. His review of payroll records revealed the following data. From May 17, 2020 to the present, there were at least 1,353 non-exempt employees in California and 45,080 pay periods worked. During the relevant period, all non-exempt employees were paid at least the applicable minimum wage in California: $13.00 per hour in 2020; $14.00 per hour in 2021; $15.00 per hour in 2022; $15.50 per hour in 2023; and $16.00 per hour in 2024. From May 17, 2021, at least 726 non-exempt employees separated from their employment. From May 17, 2021, to the present, there were 11,040 pay periods. Employees are paid weekly, there are 52 pay period per year, and from May 17, 2023, to the present, each non-exempt employee would have received an itemized wage statement that recorded hours worked, rates of pay, and other items of information. There were 11,040 wage statements issued.[10]

In the notice of removal, the defendant applied assumptions to these predicate facts to calculate the damages.

First, for the unpaid minimum wages, based on the rounding and automatic deducting of thirty minutes for meal breaks, the defendant assumed fifteen minutes of unpaid non-overtime work per pay period for a total of $165,669 ($14.70 hourly rate * .25 hours per pay period * 45,080 pay periods). Liquidated damages also would be $165,669 for a total of $331,338.[11]

Second, for the unpaid overtime wages, again based on the rounding and automatic deducting of the thirty minutes for meal breaks, the defendant assumed fifteen minutes of unpaid overtime work

---

[8] Notice of Removal – ECF No. 1 at 10–17 (¶¶ 26–41); Jones Decl. – ECF No. 3 at 2–3 (¶¶ 6–11).
[9] Mot. – ECF No. 8 at 7.
[10] Jones Decl. – ECF No. 3 at 2–3 (¶¶ 4, 6–11).
[11] Notice of Removal – ECF No. 1 at 10–11 (¶ 27).

per pay period for a total of $248,503 ($14.70 hourly rate * .25 hours per pay period * 45,080 pay periods * 1.5 overtime premium).[12]

Third, for meal periods, because the plaintiff alleged a uniform practice, the defendant assumed three missed meal periods per pay period for a total of $1,998,028 (45,080 pay periods * 3 missed meals * $14.70 hourly rate).[13]

Fourth, for waiting-time penalties, based on the three-year statute of limitations, the amount is $2,561,328 ($14.70 hourly rate * 8 hours * 30 days * 726 former employees).[14]

Fifth, for itemized wage statements, based on the one-year statute of limitations, the amount is $1,074,800 (Initial Penalty (584 putative class members * $50) + Continuing Penalty ((11,040 total pay periods – 584 initial pay periods) * $100).[15]

Sixth, unreimbursed business expenses for personal cellphone use would increase the amount in controversy.[16]

Seventh, attorney's fees would too. Based on the circuit's benchmark for fees of twenty-five-percent of the common fund, this adds $1,553,499 (($248,503 overtime wages + $331,338 minimum wages + $1,998,028 meal premiums + $2,561,328 waiting-time penalties + $1,074,800 wage-statement penalties) * .25).[17]

In support of their opposition, the defendant submitted a declaration from Mark Stephens, Senior Vice President, Business Intelligence and Analytics, for the Tarian Group, LLC, the parent company of HSS California. His review of business records revealed the following data. From May 17, 2020, to July 2024, at least 1,704 non-exempt employees worked in California. The average hourly rate was $19.85. From May 17, 2020, to July 2024, non-exempt employees were paid weekly, and the defendant "processed" 20,546 paystubs. From May 17, 2021, to July 2024, 1,140

---

[12] *Id.* at 11–12 (¶ 28).
[13] *Id.* at 12–13 (¶¶ 29–30).
[14] *Id.* at 13–14 (¶¶ 31–32).
[15] *Id.* at 14–15 (¶¶ 33–35).
[16] *Id.* at 15 (¶¶ 36–38).
[17] *Id.* at 15–17 (¶ 39–41).

non-exempt employees separated from their employment.[18] From May 17, 2020, to July 2024, (1) the average work shift was seven hours, and (2) California employees worked 409,128 work shifts (372,551 were at least three and a half hours, 298,924 were more than five hours, and 224,703 were more than eight hours).[19]

In its opposition, the defendant applied assumptions to these predicate facts to calculate the damages.

First, for the unpaid minimum wages, for the 409,128 shifts in the class period, the defendant assumed six minutes of unpaid minimum wages per shift (based on the alleged rounding). At the $14.70 average minimum wage per hour, this totals $601,418 ($14.70 hourly rate * 0.1 hours * 409,128 shifts). (The $14.70 rate is the rate in the declaration in support of the notice of removal, not the $19.85 rate in the declaration in support of the motion.) Liquidated damages also would be $601,418 for a total of $1,202,836. (The opposition says that the total is $1,624,238.) A more conservative estimate based on a failure to pay minimum wage for sixty percent of the shifts worked (245,476 shifts) reduces the amount in controversy in this category to $721,701.[20]

Second, for the unpaid overtime wages, again based on the rounding and automatic deducting of the thirty minutes for meal breaks, the defendant assumed three minutes of unpaid wages for each meal-period-eligible shift (224,703 shifts exceeding eight hours). This totals $334,526 ($19.85 hourly rate * 1.5 overtime premium * 0.05 hours per shift * 224,703 shifts).[21]

Third, for meal periods, because the plaintiff alleged a uniform practice of automatically deducting thirty minutes, the defendant assumed a sixty-percent violation rate (based on three meal breaks missed per pay period) for each meal-period-eligible shift (298,924 shifts of more than five hours). This totals $3,560,184 (.6 * 298,924 shifts * $19.85 hourly rate). Assuming a more

---

[18] Stephens Decl. – ECF 12-1 at 2–3 (¶¶ 1–8).

[19] *Id.* at 3–4 (¶¶ 9–11).

[20] Opp'n – ECF No. 12 at 15–16.

[21] *Id.* at 15–17.

conservative violation rate of thirty percent yields $1,780,992.42. (The opposition says that the total is $1,977,880 because it used thirty-three percent in the math calculation.)[22]

Fourth, for rest periods, the defendant assumes that a violation took place during sixty percent of rest-period-eligible shifts (372,551 shifts of more than three-and-a-half hours). This totals $4,437,082 (.6 * 372,551 shifts * $19.85 hourly rate).[23]

Fifth, for itemized wage statements, based on the one-year statute of limitations beginning May 17, 2023 (one year before the lawsuit was filed), the amount is $2,020,000 (Initial Penalty (692 putative class members * $50) + Continuing Penalty ((20,546 total pay periods – 692 initial pay periods) * $100). This estimate assumes that putative class members received no more than forty wage statements during the relevant period and thus that no employee recovers more than the $4,000 cap under Cal. Labor Code § 226(e).[24]

Sixth, for waiting-time penalties, based on the three-year statute of limitations, the amount is $4,752,090 ($19.85 hourly rate * 7 hours * 30 days * 1,140 former employees).[25]

Seventh, according to data from the U.S. Bureau of Labor Statistics, the average monthly cellphone costs for May 19 to May 2023 is $47.85.[26] If class members use their cell phones for work 6.4% of the time each month, that is $3.04. The total is $48,557 (1,704 employees * 15,973 months worked (calculated from 69,218 workweeks / 52 weeks per year)).[27]

---

[22] *Id.* at 18–20.

[23] *Id.* at 21.

[24] *Id.* at 23.

[25] *Id.* at 25–26.

[26] *Id.* at 26 (citing U.S. Bureau of Labor Statistics, Databases, Tables & Calculators by Subject: Wireless telephone services in U.S. city average, all urban consumers, not seasonally adjusted, available at https://data.bls.gov/timeseries/CUUR0000SEED03?output_view=data). The court can take judicial notice of public records and undisputed facts in them. *Lee v. County of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001). That can include documents on a government website. *White v. Social Sec. Admin.*, No. 14-cv-05604-JST, 2015 WL 3902789, at *2 (N.D. Cal. June 24, 2015) (five Social Security Administration policy documents); *Gustavson v. Mars, Inc.*, No. 13-cv-04537-LHK, 2014 WL 2604774, at *3 n.1 (N.D. Cal. June 10, 2014) (FDA letters and press releases). Key to these decisions is public availability and the undisputed reliability of the information in the documents.

[27] Opp'n – ECF No. 12 at 26.

Eighth, based on the circuit's benchmark for attorney's fees of twenty-five-percent of the common fund, this adds $2,430,235 to $4,088,818.[28]

All parties consented to magistrate jurisdiction under 28 U.S.C. § 636(c)(1).[29] The court held a hearing on September 12, 2024.

## STANDARD OF REVIEW

28 U.S.C. § 1441(a) provides that a defendant may remove a case to federal court if the plaintiff could have filed the case initially in federal court based on federal-question or diversity jurisdiction. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). District courts are courts of limited jurisdiction and, therefore, generally construe the removal statute strictly and reject federal jurisdiction if there is any doubt as to the right of removal. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). On removal, the removing party has the burden of establishing the court's jurisdiction. *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988). Some of the strict presumptions against federal jurisdiction are, however, relaxed when CAFA is the basis for jurisdiction.

When a case is removed under CAFA, it is incorrect for the court to view removal with "skepticism and resistance." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022). Under CAFA, federal district courts have original jurisdiction over class actions where (1) the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, (2) the class contains 100 or more putative class members, and (3) there is at least minimal diversity between the parties. 28 U.S.C. § 1332(d). The $5-million jurisdictional minimum may be based on aggregation of the claims of all potential class members. *Id.* § 1332(d)(6).

A defendant's notice of removal under CAFA need include only "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," and not evidentiary submissions. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014)). Evidentiary submissions are not required

---

[28] *Id.* at 28–29.

[29] Consents – ECF Nos. 10, 11.

unless the plaintiff contests, or the court questions, the defendant's allegations. *Dart Cherokee*, 574 U.S. at 89. If the plaintiff contests the amount in controversy, and the complaint does not include a facially apparent amount in controversy, "both sides submit proof," and "the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Chin v. Cole Haan, LLC*, No. 16-cv-02154-JD, 2016 WL 7211841, at *1 (N.D. Cal. Dec. 13, 2016) (quoting *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015)); s*ee Ibarra*, 775 F.3d at 1199.

When removal is based on CAFA jurisdiction, there is "no antiremoval presumption." *Dart Cherokee*, 574 U.S. at 89. But the removing party bears the burden of proving that jurisdiction is proper and "persuad[ing] the court that the estimate of damages in controversy is a reasonable one." *Chin*, 2016 WL 7211841, at *1 (quoting *Ibarra*, 775 F.3d at 1197). In this respect, a defendant removing under CAFA may satisfy its burden of establishing jurisdiction by relying "on a chain of reasoning that includes assumptions to satisfy its burden to prove by a preponderance of the evidence that the amount in controversy exceeds $5 million, as long as the reasoning and underlying assumptions are reasonable." *Jauregui*, 28 F.4th at 993 (cleaned up). Furthermore, if a defendant relies on assumptions that the court disagrees with, "the district court should consider the claim under [a] better assumption—not just zero-out the claim." *Id*. at 996.

In addition to the defendant's reasoning and assumptions, CAFA's requirements are tested by "real evidence" under procedures entrusted to the district court's discretion. *Ibarra*, 775 F.3d at 1198–1200. "The parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Id*. at 1197 (cleaned up). For example, "a declaration submitted by a company employee attesting to a review of business records can constitute competent evidence supporting amount-in-controversy calculations." *Ramirez v. HV Glob. Mgmt. Corp.*, No. 21-cv-09955-BLF, 2022 WL 1210402, at *3 (N.D. Cal. Apr. 25, 2022) (citing *Jauregui*, 28 F.4th at 992). The procedural minimum is that both parties should have "a fair opportunity to submit proof." *Ibarra*, 775 F.3d at 1200.

The amount in controversy means the "amount at stake and does not mean likely or probable liability; rather, it refers to possible liability." *Jauregui*, 28 F.4th at 994 (cleaned up).

## ANALYSIS

The plaintiff disputes the reasonableness of the defendant's assumptions regarding the amount in controversy.[30] The defendant's assumptions establish that the amount in controversy exceeds $5 million, exclusive of interest and costs.

Preliminarily, the court can consider the declarations and the data in them: they are based on a review of business records and are sufficient as "summary-judgment-type" evidence. *Sloan v. Pfizer, Inc.*, No. C 08-1849 SBA, 2008 WL 4167083, at *2 (N.D. Cal. Sept. 8, 2008) ("Personal knowledge may be inferred from a declarant's position."); Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *JL Beverage Co. v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016) (the court can consider evidence at summary judgment if the underlying evidence "could be provided in an admissible form at trial, such as by live testimony"). Also, given the plaintiff's challenge to the defendant's assumptions in the notice of removal, it was appropriate for the defendant to submit new evidence in support of its opposition to the motion to remand. *Dart Cherokee*, 574 U.S. at 89.

The main issue is whether the defendant's assumptions are reasonable.[31] They are.

First, for the unpaid minimum wages, the defendant assumed six minutes of unpaid minimum wages per shift. Another court in this district denied a motion to remand challenging a similar assumption:

> This estimate assumes that each employee experienced an average of six minutes of unpaid time per day. Given the complaint's allegations that all employees were

---

[30] Mot. to Remand – ECF No. 8 at 9–23; Reply – ECF No. 13 at 7–10.

[31] The motion to remand necessarily focused on the defendant's assumptions in the notice of removal. The Statement captures those assumptions for context. The new submissions in support of the defendant's opposition to the motion to remand contain the operative assumptions.

ORDER – No. 24-cv-03769-LB                                9

> subject to this [rounding] policy, such an estimate is not unreasonable; it is rather conservative. While it is true, as Plaintiff objects, that Defendants have in their possession records that would allow a more precise calculation of the average time lost per week, requiring Defendants to produce this information would amount to requiring them to prove up Plaintiff's case on the merits."

*Altamirano v. Shaw Indus., Inc.*, No. C–13–0939 EMC, 2013 WL 2950600, at *10 (N.D. Cal. June 14, 2013). As an alternative, the defendant applied a more conservative estimate. Both are reasonable.

Second, the defendant assumed three minutes of unpaid overtime per day. That is a reasonable assumption too. *Archuleta v. Avcorp Composite Fabrication, Inc.*, No. CV 18-8106 PSG (FFMx), 2018 WL 6382049, at *3–4 (C.D. Cal. Dec. 6, 2018) ("But it is hard to imagine any rounding increment that would render HITCO's objectively low estimate of three minutes of unpaid time per day unreasonable").

The plaintiff counters that the defendant has the payroll records and should calculate the percentage of class members affected by rounding and if so, by how many minutes on average.[32] Citing *Miller v. A-1 Express Delivery Servs., Inc.*, it contends that the defendant could provide evidence, instead relies on assumptions, and overcalculates the amount in controversy.[33] No. 16-cv-6251-WHO, 2017 WL 462406, at *5 (N.D. Cal. Feb. 3, 2017). *Miller* involved the defendant's failure to provide any factual support for the foundational assertion that there were three hundred full-time employee equivalents. *Id.* at *4. That is not the case here: the underlying data predicates are drawn from business records. The plaintiff does not address or distinguish the defendant's cases.

In sum, the assumptions for the minimum-wage and overtime claims are reasonable.[34]

Third, the sixty-percent violation rate for meal-and-rest breaks (three missed breaks per pay period) is reasonable. The defendant also assumed a more conservative violation predicated on thirty percent of the shifts, which is reasonable too. *Garcia v. Praxair, Inc.*, No. 3:18-CV-03887-WHO, 2018 WL 4471151, at *3 (N.D. Cal. Sept. 18, 2018) (estimate of three meal-break and rest-

---

[32] Reply – ECF No. 13 at 7–8.

[33] *Id.* at 8.

[34] The plaintiff does not otherwise address the calculation of liquidated damages (except presumably that to the extent that the assumptions fail, the liquidated damages do too).

period violations per pay period was reasonable). The plaintiff again cites *Miller*: it does not change the analysis for the reasons advanced in the last section.

Fourth, the calculations for the wage-statement penalties are based on a reasonable assumption. Claim five alleges a failure to pay for minimum and overtime wages and missed meal and rest periods. The allegations support an assumption of at least one meal-break and one rest-break violation each week. This means that every wage statement issued to the class was defective. *Cavada v. Inter-Cont'l Hotels Grp., Inc.*, No. 19cv1675-GPC (BLM), 2019 WL 5677846, at *8 (S.D. Cal. Nov. 1, 2019). The plaintiff did not counter this in his reply.

Fifth, the assumptions regarding waiting-time penalties are reasonable. The plaintiff did not counter the defendant's arguments advanced in the opposition to the motion to remand.

Sixth, the twenty-five-percent benchmark was a reasonable approach to attorney's fees. *Ramirez*, 2022 WL 1210402, at *8.

A conservative calculation of the amount in controversy meets the CAFA amount-in-controversy requirement.

## CONCLUSION

The court denies the motion to remand.

**IT IS SO ORDERED.**

Dated: September 16, 2024

_____
LAUREL BEELER
United States Magistrate Judge