UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| ALEJANDRO VELASCO,<br><br>               Plaintiff,<br><br>    v.<br><br>HSS CALIFORNIA, INC.,<br><br>               Defendant. | Case No. 24-cv-03769-LB<br><br>**ORDER COMPELLING ARBITRATION**<br><br>Re: ECF No. 27 |

## INTRODUCTION

This is a putative class action claiming wage-and-hours violations by HSS California, which provides security services. The defendant removed the case to federal court, asserting CAFA jurisdiction, and moved to compel arbitration.[1] The plaintiff contends that (1) he does not recall signing the arbitration agreement and (2) the agreement is procedurally and substantively unconscionable because it is a contract of adhesion, did not attach the arbitration rules, and limits the time period to conduct discovery.[2] The court compels arbitration: the plaintiff signed the agreement electronically, and the asserted grounds do not establish unconscionability.

---

[1] Notice of Removal – ECF No. 1 at 3 (¶ 7), 5–18 (¶¶ 3–44); Compl. – ECF No. 1-1 at 3 (¶¶ 1–3); Mot. – ECF No. 27. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Opp'n – ECF No. 29.

ORDER – No. 24-cv-03769-LB

**STATEMENT**

The defendant hired the plaintiff in March 2023.[3] (The plaintiff agrees that he worked for the defendant as a nonexempt "Security Officer" from April 23, 2023, to May 1, 2024.[4]) The plaintiff does not dispute the existence of an arbitration agreement and instead challenges (1) whether he signed it and (2) whether it is unconscionable. The next three sections summarize the onboarding process for the plaintiff, (2) the arbitration agreement, and (3) the relevant procedural history.

**1. The Onboarding Process**

The arbitration agreement is three pages long and has the following notation at the bottom left corner of each page: "Electronically signed by Alejandro Velasco (Lakers 2023) 3/7/2023 4:27:40 PM, IP Address: 73:71.70.16." Section 8 on page three is the "Employee Acknowledgment of Agreement" and has lines for a hardcopy signature: Employee Name (Print), Employee Signature, and Date. Those lines are blank.[5]

The defendant's Vice President for HR is Heather Fuqua, who describes the onboarding process. The plaintiff signed the agreement digitally on March 7, 2023, at 4:27:40 p.m. The IP address next to his electronic signature is the IP address of the device used to sign the agreement.[6]

She describes how employees e-sign the Arbitration Agreement. From at least January 2023 to the present, the company uses a companywide online applicant tracking system called "Paycor" to facilitate and streamline the onboarding process for new hires.[7] The company uploads the agreement to Paycor, which then creates the form in digital format. "An employee's unique username and password [are] created during the onboarding process when he or she applies to a position with Defendant. Only the employee's unique name and password associated with that employee's Paycor account could be used to access that employee's unique account and sign the

---

[3] Fuqua Decl. – ECF No. 27-3 at 2 (¶ 3).

[4] Velasco Decl. – ECF No. 29-1 at 2 (¶ 4).

[5] Arb. Agreement, Ex. A to Fuqua Decl. – ECF No. 27-3 at 7–9.

[6] Fuqua Decl. – ECF No. 27-3 at 3–4 (¶ 8).

[7] *Id.* at 2 (¶ 4).

forms or agreements assigned to that specific account."[8] "To access Paycor, employees are required to create a unique username and password." Before a new employee starts work, the defendant emails directions to the employee at the employee's personal email account with directions on how to access the defendant's forms and agreements. One of the forms is the arbitration agreement.[9] From at least January 2023 to the present, employees were required to sign the arbitration agreement as a condition of employment.[10] If an employee signs into Paycor using his unique username or password but does not digitally sign the arbitration agreement, the defendant's records will not reflect that the agreement was digitally signed. As a result, if the records show a digital signature, that means that the new employee signed into the Paycor website with his unique password and signed the agreement.[11]

In addition to signing the arbitration agreement at 4:27:40 p.m., the plaintiff digitally signed other documents that day: the digital signatures for documents have time stamps of 4:32:18 PM (for the EEO-1 Voluntary Self Identification Form) and 4:33:39 PM (for the EEO notices that follow).[12] The defendant submitted additional documents (as part of its reply brief) that also were digitally signed on March 3, 2023: they have time stamps of 4:38:37 PM (File Authorization Form authorizing release of files such as a motor-vehicle report and a criminal background investigation), 4:38:49 PM (Policy on Tobacco Free Environment), and 4:31:27 PM (confidentiality agreement).[13]

The plaintiff declares that the defendant "instructed" him that he must sign "various onboarding documents as a condition of [his] being fully hired and/or to remain eligible for continued employment." The defendant "never discussed or explained to [him] the contents of any of the onboarding documents, including the alleged arbitration agreement."[14] He has a limited education

---

[8] *Id.* at 2–3 (¶ 5).

[9] *Id.* at 3 (¶ 6).

[10] *Id.* (¶ 7).

[11] *Id.* (¶ 9).

[12] Forms, Ex. B to *id.* – ECF No. 27-3 at 11–33.

[13] Forms, Ex. C to Sandino Decl. – ECF No. 31-1 at 18–20.

[14] Velasco Decl. – ECF No. 29-1 at 3 (¶ 9). The defendant objects to the declaration on the grounds of foundation and relevance. Def.'s Objs. – ECF No. 32. The objection to paragraph 4 is moot: the court

and proficiency in English, could not knowingly understand and appreciate the meaning and implications of the arbitration agreement, and was left with no additional understanding beyond that [he] was specifically instructed by Defendant that [his] signature was required as a condition of his employment."[15] "If presented with a meaningful choice and opportunity, I would never agree to a document that gives up my rights to pursue my legal claims against Defendant in court with the aid of a jury."[16] "Although [he] recall[s] completing onboarding documents at the start of [his] employment with Defendant, [he] has no recollection of ever signing a document that looks like the purported arbitration agreement put forth in Defendant's motion and on that basis deny ever signing the purported agreement."[17] He "has no recollection whatsoever of completing the procedural steps related to Paycor that are identified in the Declaration of Heather Fuqua."[18] He searched his "email for any records or emails [I] may have that would show I received certain emails from Ms. Fuqua or Defendant or Paycor, but found no such emails." He has "no recollection of assigning the username Lakers2023."[19] The only electronic device that he would have used was his "cellphone at the time, which is the same exact phone as I have today. However, my phone's IP address does not match the IP address listed on the purported agreement. Therefore, because a different IP address is used as compared to the only one I would have used at the time, I deny that the signature on the agreement is attributable to no one else but me."[20]

In support of its reply, the defendant submitted a supplemental declaration by Laura Sandino, the defendant's Senior HR Business Partner. She describes the onboarding process at the time that the plaintiff signed the arbitration agreement in March 2023. The defendant uses Paycor to send

---

does not rely on it. For the other representations about what the plaintiff knew or understand, the plaintiff has knowledge about what he knows or understood. To the extent that the declarations of fact are irrelevant, the court has not considered them. They do not in any event alter the outcome.

[15] Velasco Decl. – ECF No. 29-1 at 3 (¶ 10).
[16] *Id.* (¶ 11).
[17] *Id.* (¶ 12).
[18] *Id.* (¶ 13).
[19] *Id.* at 4 (¶ 14).
[20] *Id.* (¶ 15).

ORDER – No. 24-cv-03769-LB                4

employees policy documents and agreements for review and signature, including the arbitration agreement at issue here. "To do so, Defendant uploads a copy of the document to Paycor. The system sends the document to the employee through Paycor. Then, the employee receives an email alert that there is a document ready for review." [21] "Paycor then generates an e-signature and places it on the bottom left-hand corner of each page of the documents. Paycor also places the IP address of the device used and a date and time stamp for the signature. Employees retain access to each document they sign in Paycor and can download them at their convenience."[22]

An audit trail from Paycor reveals that the plaintiff created an account on March 6, 2023, and registered with Paycor on March 7, 2023. "Plaintiff registered using a devise with an IP address of '73.71.70.16' from a mobile device." Ms. Sandino attaches a screen shot.[23] Column B is titled "ActivityTypeID" and refers to the user's activity a number (here, 1 or 2). 1 refers to "user created" and 2 is "user registered." The "user registered" field reflects the IP address 73.71.70.16, and the browser is "Mobile Safari."[24] The audit shows that the plaintiff, using username Laker2023, last signed into Paycor on November 28, 2024. His email address is nato101981@gmail.com. She attaches a screenshot showing this.[25] She also authenticates the documents that the plaintiff submitted: the arbitration agreement (with the plaintiff's e-signature, date, time, and IP address at the bottom lefthand corner), the plaintiff's employment application (also showing his email address of "nato1011981@gmail.com), and the other onboarding documents discussed above.[26]

Stephanie Obrycki, a Senior Manager for Vendor Support Operations for Paycor, submitted a declaration in support of the plaintiff's reply brief. Paycor is an HR software platform that provides services such as payroll, onboarding, and certain personnel-management services.[27] It has a secure

---

[21] Sandino Decl. – ECF No. 31-1 at 3 (¶ 6).

[22] *Id.* (¶ 7).

[23] *Id.* (¶ 10).

[24] *Id.* (¶¶ 10–11).

[25] *Id.* at 4 (¶ 12).

[26] *Id.* at 4–5 (¶¶ 13–16) & Docs., Exs. A–C to *id.* – ECF No. 31-1 at 7–20).

[27] Obrycki Decl. – ECF No. 31-2 at 2 (¶ 3).

online portal called the Perform Product Suite, which includes the Perform Onboarding product/service that has the paperwork that a client's new employees must review, acknowledge, complete, and execute as part of the client's onboarding process.[28] The defendant is a client. Ms. Obrycki reviewed Paycor's business records, including those relating to the plaintiff (such as the arbitration agreement). The onboarding procedures for Paycor's secure online product described in her declaration are those that were in place at the time the plaintiff was employed. The system requires unique user credentials.[29]

When the defendant extends an offer of employment, as it did with the plaintiff, an HSS representative with the appropriate security access creates a new employee profile in Paycor's client portal with the employee's full name and personal email address. She then selects "Send Onboarding Invite." Ms. Obrycki attaches screenshots and describes the steps that follow, such as delegating I-9 information, selecting an Onboarding Group for the new hire, uploading documents for the new hire to review and sign, and generating the onboard invitation email to the new hire's personal email address.[30] New hires click the link, encounter a "Let's Get Started" screen, enter a unique code provided in the invitation email (but if they use the link, the code is automatically input), and verify their last name and email.[31] Then, the new employee must create an account by creating a unique username and password, enable multifactor authentication for future access, and create four unique security questions and answers. The new hires must read and accept Paycor's End User License Agreement.[32] Users then complete their onboarding process, including signing the forms, either then or by signing in later. To complete the onboarding process, new hires must complete the requirements for eight categories (e.g., Personal, I-9 verification, Direct Deposit, and the like).[33] After providing preliminary information, new hires must set up an electronic signature

---

[28] *Id.* (¶ 4).
[29] *Id.* at 2–3 (¶¶ 5–11).
[30] *Id.* at 3–5 (¶¶ 12–16).
[31] *Id.* at 5 (¶¶ 17–18).
[32] *Id.* at 6–7 (¶ 19).
[33] *Id.* at 7–8 (¶¶ 21–22).

on the "Documents" page of the platform. This step was required before any documents could be reviewed. The process involved clicking "Setup Electronic Signature," which opened a window, and then typing in the signature. Users must acknowledge that they understand that the electronic signature is a binding representation on the legal documents and contracts. To complete the setup of the signature, the employee must select "I Agree, Continue."[34] After setting up the electronic signature, employees must review and sign each onboarding document, each time typing their electronic signature and selecting "Sign and Continue." Each time, the employee "confirm[s] that [he] has carefully reviewed the document and any information provided by [him] is true, accurate, and complete" and that he "understand[s] that by signing this form, I am agreeing that it represents my legally binding signature."[35]

If the plaintiff did not review each page of the arbitration agreement, electronically sign the agreement, and click "Sign and Continue," then he could not continue or complete HSS's onboarding process.[36] Once a new hire signs an onboarding document, including the Arbitration Agreement, the signed documents are converted to flattened pdfs. Paycor and HSS cannot edit or overwrite the documents.[37] When an individual signs documents, including the Arbitration Agreement, the system automatically stamps the signed document with the date, time, and the IP address of the device used.[38]

Ms. Obrycki reviewed the plaintiff's onboarding documents, including the Arbitration Agreement. According to Paycor's records, the plaintiff signed the arbitration agreement on March 7, 2023, at 4:27:40 p.m. and via the IP address, and he electronically signed other onboarding documents that day. She attaches the signed document and the other onboarding documents discussed above.[39]

---

[34] *Id.* at 8 (¶¶ 23–24).
[35] *Id.* at 9 (¶ 25).
[36] *Id.* (¶¶ 26–27).
[37] *Id.* (¶ 28).
[38] *Id.* (¶ 29).
[39] *Id.* at 10 (¶¶ 30–31) & Docs., Exs. A–B to *id.* – ECF No. 31-2 at 12–38.

**2. Arbitration Agreement**

The agreement, which is three pages, is titled (in caps and bold) "Mutual Arbitration Agreement" and provides for arbitration of the claims at issue in this litigation.[40] It has provisions for administration, including incorporating the employment arbitration rules of the American Arbitration Association.[41] It defines the rights of the parties and the authority of the arbitrator, including prohibiting the arbitrator from "consolidating the claims of others into one proceeding as a class, collective, representative, joint, or group action (collectively 'Class Action') or awarding relief to a group of claimants or employees in one proceeding, and (b) the parties waive any right to proceed in a Class Action."[42] It has a thirty-day opt-out provision.[43] It provides that the arbitrator must follow the law of the state where the claims arose, can hear only disputes recognized by law, can dismiss claims based on the summary-judgment standards of the jurisdiction, can order only remedies authorized by law (except for the class-action waiver), and has the authority to issue subpoenas to compel document discovery and the appearance of witnesses and "shall do so upon the reasonable request of either party." "The parties have the right to file dispositive motions and post-hearing briefs." The "arbitrator shall make reasonable efforts to conduct the arbitration hearing within six months of the arbitrator's appointment but has discretion to extend the time period upon a showing of good cause."[44]

The last section is titled "Employee Acknowledgment" (bolded and underlined) and includes an acknowledgment that the employee has read it, has the right to consult with an attorney, and can obtain a translation in a language other than English by asking the company. The last sentence is in caps: "BY THIS AGREMEENT, EMPLOYEE IS KNOWINGLY AND VOLUNTARILY WAIVING THE RIGHT TO FILE A LAWSUIT AGAINST THE COMPANY OR PROCEED IN COURT IN FRONT OF A JUDGE OR JURY, EXCEPT AS DISCUSSED ABOVE."[45]

---

[40] Arb. Agreement, Ex. A to Fuqua Decl. – ECF No. 27-3 at 7 (§§ 1–2).

[41] *Id.* at 7 (§ 3) (linking to the rules and saying that they can be requested from the company).

[42] *Id.* at 8 (§ 5).

### 3. Procedural History

The court has subject-matter jurisdiction under the Class Action Fairness Act. 28 U.S.C § 1332(d).[46] The parties consented to magistrate-judge jurisdiction.[47] *Id.* § 636(c). The court held a hearing on the motion to compel arbitration on January 16, 2025.

## ANALYSIS

Under the Federal Arbitration Act (FAA), "arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67 (2019); *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1259 (9th Cir. 2017) (same) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). "Section 2 of the FAA makes agreements to arbitrate 'valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract.'" *Poublon*, 846 F.3d at 1259 (citing 9 U.S.C. § 2). "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that the district court *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3–4). "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citing 9 U.S.C. § 4). "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Id.*

---

[43] *Id.* at 8–9 (§ 7).

[44] *Id.* at 7–8 (§ 4).

[45] *Id.* at 9 (§ 8). There are some exemptions – not applicable here — to arbitrable claims, such as workers' compensation claims. *Id.* at 7 (§ 2).

[46] Order – ECF No. 19.

[47] Consents – ECF Nos. 10–11.

ORDER – No. 24-cv-03769-LB                9

Here, it is undisputed that the agreement covers the claims. The parties dispute whether the agreement is valid on two grounds: (1) whether the plaintiff signed the arbitration agreement and (2) whether the agreement is unenforceable because it is unconscionable.

**1. The Plaintiff's Agreement**

The first issue is whether the plaintiff signed the arbitration agreement. If he did not, then there is no agreement, and the defendant cannot compel arbitration. *Henry Schein*, 586 U.S. at 67 (arbitration is a matter of contract). But if the issue is only the plaintiff's failure to read what he signed (here, an unambiguous arbitration agreement), then the plaintiff cannot resist arbitration. *Ashebey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1325 (9th Cir. 2014) (employee who signs employee handbook with unambiguous arbitration clause can be compelled to arbitration). The defendant has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence. *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017).

The defendant's practices — about how it onboards employees through a secure platform that requires their electronic assent to the arbitration agreement at issue here — is unrefuted.[48] The plaintiff's assertion really is that he does not remember signing the agreement. The defendant's evidence establishes the plaintiff's assent by a preponderance of the evidence.

In *Trevino v. Acosta, Inc.*, the court found that similar facts established the plaintiff's employee's assent to the arbitration agreement, even though the employee there did not recall seeing an arbitration agreement and, like the plaintiff here, denied signing it. No. 17-cv-06529 NC, 2018 WL 3537885, at *1, 6 (N.D. Cal. July 23, 2018). The *Trevino* court considered an HR manager's declaration and a screenshot showing the plaintiff's name and the onboarding tasks he had completed. *Id.* at *3. The employer described the onboarding process, showed that the employee had completed it by logging in with his username and password, and provided a copy of the arbitration agreement that the employee had signed. *Id.* at *5. That evidence proved that the

---

[48] *See* Statement.

*Trevino* plaintiff electronically signed the arbitration agreement because "the declarations prove that signing the arbitration agreement was required of all new employees like Trevino." *Id.* at *6.

In reaching this conclusion, the *Trevino* court recognized that the arbitration agreement had only asterisks (and not Trevino's name). That did not preclude authentication of the signature: the proper method of authentication was to "loo[k] only to the declarations of the human resource managers to verify that completing the onboarding process required a signature on the arbitration agreement and that the plaintiff completed the onboarding process." *Id.* at 7. The record established by a preponderance of the evidence that the *Trevino* plaintiff signed the agreement. *Id.* at *7. The court thus granted the motion to compel arbitration. *Id.* at *10.

The facts here, like the facts in *Trevino*, establish that the plaintiff signed the arbitration agreement. The plaintiff undisputedly completed the onboarding process. He perhaps does not remember the arbitration agreement, but the record shows that he signed it. There is no dispute that an electronic signature is binding when it can be attributed to a person, as it can be here. Cal. Civ. Code §§ 1633.7, 1633.9(a)–(b); *People v. Skiles*, 51 Cal. 4th 1178, 1187 (2011) (a writing can be authenticated by circumstantial evidence and by its contents).

The issue about the IP address does not alter this conclusion. The same IP address was used for all onboarding documents. The plaintiff does not deny signing those. IP addresses also can vary based on the device's connection to a particular network. *United States v. Acevedo-Lemus*, No. SACR 15-00137-CJC, 2016 WL 4208436, at *5 (C.D. Cal. Aug. 8, 2016).

Similarly, the plaintiff's intimation in his declaration — but not in his opposition — that language was a barrier does not alter this result. He had the opportunity to ask for a translation.[49] *Cabellero v. Premier Care Simi Valley LLC*, 69 Cal. App. 5th 512, 519–20 (2021) (enforcing arbitration agreement despite Spanish-speaking employee's being unable to rad English because the employee's failure to take steps to learn the contents of the agreement was "attributable to his own negligence and may not be imputed to [the employer]").[50]

---

[49] *See id.*

[50] *See* Reply – ECF No. 31 at 13 (collecting cases).

**2. Unconscionability**

The FAA provides arbitration agreements are unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" federal law. *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). The court determines whether the putative arbitration agreement is enforceable under the laws of the state where the contract was formed. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Ingle v. Circuit City Stores*, 328 F.3d 1165, 1170 (9th Cir. 2003).

"Under California law, 'the party opposing arbitration bears the burden of proving any defense, such as unconscionability.'" *Poublon v. C. H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017) (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012)). In California, contractual unconscionability has procedural and substantive components. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). "[T]he former focus[es] on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *Id.* (cleaned up). "Procedural and substantive unconscionability 'need not be present in the same degree.'" *Poublon*, 846 F.3d at 1260 (quoting *Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899, 910 (2015)). "Rather, there is a sliding scale: 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" *Id.* (quoting *Sanchez*, 61 Cal. 4th at 910).

The plaintiff contends that the agreement is procedurally unconscionable because it was a condition of employment (and thus was an adhesion contract), and the AAA rules were never given to him.[51] He contends that the agreement is substantively unconscionable because the agreement limits discovery to a six-month time period.[52] The plaintiff's arguments do not establish unconscionability that invalidates the agreement.

---

[51] Opp'n – ECF NO. 29 at 13–15.

[52] *Id.* at 16–17.

ORDER – No. 24-cv-03769-LB                12

Procedural unconscionability focuses on the circumstances surrounding the negotiation of the contract. *Gatton v. T–Mobile USA, Inc.*, 152 Cal. App. 4th 571, 580–581 (2007). "Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice." *Bruni v. Didion*, 160 Cal. App. 4th 1272, 1288 (2008) (cleaned up). "Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." *Id.* (cleaned up).

Mandatory arbitration agreements — presented as a condition of employment — do not invalid arbitration agreements as procedurally unconscionable. *Armendariz*, 24 Cal. 4th at 114–15; *Balthazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1245 (2016) (arbitration agreements not procedurally unconscionable merely because they are adhesive or must be signed as a condition of employment); *Chambers of Comm. v. Bonta*, 62 F.4th 473, 488–90 (9th Cir. 2023) (under California law, an employee can consent to an employment contract, even if the contract was the product of unequal bargaining power and contains terms (such as an arbitration provision); "mere inequality in bargaining power is not a sufficient reason to reuse to enforce an arbitration agreement in the employment contract") (cleaned up).

The plaintiff's citation to *OTO L.L.C. v. Kho* does not change this conclusion.[53] 8 Cal. 5th 111, 126 (2019). That case involved an arbitration agreement presented to the plaintiff at work, while another employee waited, and time spent reviewing the agreement would have reduced the plaintiff's pay. *Id.* at 127. The circumstances here — an agreement presented via an electronic onboarding portal with a thirty-day opt-out process — is different and not procedurally unconscionable under the earlier-cited cases.

Courts have rejected the argument that a failure to attach the arbitration rule — here, the AAA rules linked in the agreement and available on request — is procedurally unconscionable. *Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1472 (2013) (failure to attach AAA rules alone did not support procedural unconscionability).

---

[53] *Id.* at 14.

Turning to substantive unconscionability, the arbitration does not limit discovery to six months and instead provides only that the arbitrator must make reasonable efforts to hold the arbitration within six months (but can extend that time period for good cause).[54] The agreement also allows discovery and a motions process that approximates what would happen in court (except for class actions and jury trials). *Cf. Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 984 (2010) (reversing trial court ruling that an arbitration agreement was unconscionable because it limited discovery to one deposition of a natural person and gave the arbitrator "broad discretion contemplated by the AAA rules to order the discovery needed to sufficiently litigate the parties' claims"). There is no substantive unconscionability.

## CONCLUSION

The court grants the motion to compel arbitration and stays the case pending arbitration. *Smith v. Spizziri*, 601 U.S. 472, 474, 476–78 (2024) (per curiam) (requiring stay).

This disposes of ECF No.

**IT IS SO ORDERED.**

Dated: January 16, 2025

_____
LAUREL BEELER
United States Magistrate Judge

---

[54] *See* Statement.